IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARYA THOMPSON-BEHREND,<br><br>　　　　Plaintiff,<br><br><br>　v.<br><br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br><br>　　　　Defendant. | Case No. 2:09-CV-228-TS<br><br><br><br>**REPORT AND RECOMMENDATION** |

Before the court is an action filed by Plaintiff, Marya Thompson-Behrend, asking the court to reverse the final agency decision denying her application for Disability Insurance Benefits (hereafter "DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 401-433. The Administrative Law Judge (hereafter "ALJ") found that Plaintiff was not disabled because she is capable of performing work that exists in significant numbers in the national economy. Plaintiff now challenges the ALJ's decision by arguing that it is legally erroneous and not supported by substantial evidence.

Because the court concludes that oral arguments are not necessary in this case, the court has determined this case on the basis of the briefing alone. *See* DUCivR 7-1(f). Having

carefully considered the parties' memoranda and the complete record in this matter, the court recommends that the case be affirmed.

## BACKGROUND

Plaintiff filed for DIB in May 2005, alleging an inability to work since November 2004 due to chronic myofascial (muscle) pain in both arms, major depression, and associate identity (multiple personality) disorder.[1] (Doc. 10, the certified copy of the transcript of the entire record of the administrative proceedings relating to Marya Thompson-Behrend (hereafter "Tr. __") 56-58.) After her application was denied initially (Tr. 29), and on reconsideration (Tr. 27), Plaintiff requested a hearing before an ALJ. On December 7, 2007, Plaintiff appeared at the hearing before an ALJ. (Tr. 353-96.) On December 27, 2007, the ALJ issued a decision denying Plaintiff's claim, finding Plaintiff could perform substantial work that existed in the national economy. (Tr. 13-26.) On January 9, 2009, the Appeals Council denied Plaintiff's request for review[2] (Tr. 5-7), and the ALJ's decision became the Commissioner's final decision.

---

[1]Plaintiff was previously found to be disabled for a period from January 29, 2001, through November 30, 2002, based on a stipulated request for a closed period of disability. (Tr. 19.)

[2]After the ALJ's December 27, 2007 decision, Plaintiff's counsel submitted additional evidence to the Appeals Council, including treatment records and a vocational evaluation. (Tr. 8, 309-53.) Some of the new materials submitted duplicated evidence that was already in the record. *See, e.g.,* Tr. 310-11.

*See* 20 C.F.R. § 404.981.  As such, Plaintiff had exhausted her administrative remedies and the case was ripe for judicial review.  *See* 42 U.S.C. § 405(g).

On March 11, 2009, after receiving the Appeals Council's denial of her request for review, Plaintiff filed her complaint in this court and the case was assigned to United States District Judge Ted Stewart.  (Doc. 3.)  On March 16, 2009, Judge Stewart referred the case to United States Magistrate Judge Samuel Alba pursuant to 28 U.S.C. § 636(b)(1)(B).  (Doc. 5.)

On October 26, 2009, Plaintiff filed her opening brief requesting that the Commissioner's decision be reversed or remanded.  (Doc. 16.)  Defendant filed his response brief on November 24, 2009.  (Doc. 19.)  Plaintiff filed her reply brief on December 14, 2009.  (Doc. 20.)

## STANDARD OF REVIEW

The court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003); *accord Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "'Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'"  *Doyal*, 331 F.3d at 760 (citations omitted).  The court may "'neither reweigh the

3

evidence nor substitute [its] judgment for that of the agency.'"
*White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (citation omitted).

The court's review also extends to determining whether the Commissioner applied the correct legal standards. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). Besides the lack of substantial evidence, reversal may be appropriate where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Secretary of Health and Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

Plaintiff challenges the ALJ's decision by arguing it is not supported by substantial evidence and it is legally erroneous. Specifically, Plaintiff argues: (1) the ALJ failed to properly consider whether Plaintiff's impairments met or equaled a listed impairment; (2) the ALJ failed to properly evaluate the opinion of Plaintiff's treating medical provider; (3) the ALJ improperly evaluated Plaintiff's credibility; and (4) the ALJ improperly determined Plaintiff's residual functional capacity (hereafter "RFC"). The court examines each of these arguments in turn.

## I. Listed Impairments

The court first examines Plaintiff's argument that the ALJ failed to properly consider whether Plaintiff's impairments met or equaled a listed impairment. Specifically, Plaintiff asserts her impairments met or equaled the requirements for Listing 12.04 or 12.06. Plaintiff argues that the ALJ "failed to discuss the evidence that supported his determination," failed to "consider[] medical equivalence in regard to [Plaintiff's] mental impairments," and failed to "call[] on a medical expert to address the question of medical equivalence." (Doc. 16, at 13.)

A claimant will be presumed disabled at step three if an impairment, or combination of impairments, meets or equals the requirements of an impairment found in the "Listing of Impairments" at 20 C.F.R. pt. 404, subpt. P, app. 1. *See* 20 C.F.R. § 404.1526(b)(1)-(3). In order to establish that she meets a listing, the claimant must "meet all the specified medical criteria" for the listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Specifically, the claimant must provide specific medical findings that support each of the requisite criteria for the listing. *See Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007). The claimant must also show that the medical criteria were met for a period of 12 continuous months. *See* Social Security Ruling (hereafter "SSR") 86-8, 1986 WL 68636, at *3 ("Thus, when such an individual's impairment or combination of impairments meets or equals the level of severity

described in the listing, and also meets the duration requirement, disability will be found. . . ."); 20 C.F.R. § 404.1509.

Plaintiff challenges the ALJ's determination that her impairments did not meet the requirements for Listings 12.04 or 12.06. In order to meet Listing 12.04 (affective disorders) or 12.06 (anxiety-related disorders), a claimant must meet the specific requirements of the listing's "A" criteria and establish the required level of severity, either by establishing two of the four "B" criteria or by establishing the "C" criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04 and 12.06. To satisfy the "B" criteria, a claimant's mental impairments must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. (Tr. 19.) A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. *See Stokes v. Astrue*, 274 F. App'x 675, 681 (10ᵗʰ Cir. 2008).

The ALJ discussed the "B" criteria and explained the basis for his finding that Plaintiff had not shown the requisite level of severity. (Tr. 19-20.) The ALJ first addressed Plaintiff's

6

restrictions in activities of daily living.  Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, and caring appropriately for grooming and hygiene. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1). Plaintiff alleged that she did not cook, clean, or "really" shop (Tr. 20 (citing Tr. 93-99)); however, as the ALJ noted, the evidence shows Plaintiff prepared at least simple meals, drove, and went shopping at least occasionally (Tr. 95-96).  Moreover, as the ALJ noted, Ms. Johnson and Dr. McBride observed that Plaintiff was "able to handle her daily personal affairs, such as shopping, driving a car, and other activities of daily living," that her disorder had not impacted her personal habits, and that she had good grooming, clothing, and hygiene habits (Tr. 20 (citing Tr. 129, 132)).  *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1989) (noting that claimant's statements about his limitations were not substantiated by his treating physician's opinion).[3]  Thus, the ALJ relied on sufficient specific evidence to support his determination that Plaintiff had mild restrictions in activities of daily living.

The ALJ next assessed Plaintiff's restrictions in social functioning.  The ALJ observed that Plaintiff attended college

---

[3]Ms. Johnson and Dr. McBride also acknowledged that Plaintiff did not need assistance getting to appointments.  (Tr. 130.)

during the relevant time period, and Ms. Johnson and Dr. McBride recognized she had "the ability to do very well showing good intellectual capacity" (Tr. 20 (citing Tr. 131)). *See Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979) (recognizing that activities such as attending school may be considered in determining whether a claimant is disabled). The ALJ noted that Plaintiff's ability to relate could not be separated from her alternative personality disorder, and that her disorder affects who she is and how she functions in every situation in her life. The ALJ thus supported his determination that Plaintiff had moderate difficulties in maintaining social functioning.

Third, the ALJ assessed Plaintiff's restrictions with regard to concentration, persistence, or pace. The ALJ noted that Plaintiff's therapist had indicated that Plaintiff's dissociation affects her concentration and her degree of dissociation is affected by the stressors in her life. (Tr. 20.) The ALJ also noted that despite her impairments, Plaintiff previously had maintained regular employment, and the impairments were present when her prior stipulated closed period of disability ended on November 30, 2002, indicating that Plaintiff has been able to maintain sufficient concentration, persistence, or pace to sustain regular employment over several years.[4] (Tr. 20, 25, 70.)

_____

[4]Indeed, Ms. Johnson referred Plaintiff to vocational rehabilitation during the relevant time period. (Tr. 135.) *See Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (recognizing that a physician's statement that a claimant would

*See Cowan v. Astrue*, 552 F.3d 1182, 1191 (10th Cir. 2008).
Plaintiff argues that this reasoning does not rely on the
relevant time period; however, the court concludes that even were
it to agree with Plaintiff's argument, Plaintiff still would not
meet the requirements of Listings 12.04 and 12.06. The ALJ
properly determined that none of Plaintiff's other "B"
restrictions were "marked," that Plaintiff had not experienced
repeated episodes of decompensation (as discussed below), and
that Plaintiff did not meet the "C" criteria (as discussed
below).

Fourth, the ALJ examined whether Plaintiff had experienced
episodes of decompensation. Episodes of decompensation are
exacerbations or temporary increases in symptoms or signs
accompanied by a loss of adaptive functioning, as manifested by
difficulties in performing activities of daily living,
maintaining social relationships, or maintaining concentration,
persistence, or pace. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §
12.00(C)(4). The episodes may be inferred from medical records
showing significant alteration in medication, or documentation of
the need for a more structured psychological support system
(i.e., hospitalizations, placement in a halfway house, or a
highly structured and directing household), or other relevant
information in the record about the existence, severity, and

---

make an excellent candidate for vocational rehabilitation
supported the ALJ's finding that the claimant was not disabled).

duration of the episode.  *See id.*  In order to establish repeated episodes of decompensation, each of extended duration, the claimant generally must show three episodes of decompensation within one year, or an average of once every four months, each lasting for at least two weeks.  *See id.*  As the ALJ observed, the record did not show any episodes of decompensation during the relevant time period.  (Tr. 20.)

Thus, the ALJ examined each of the "B" factors and determined that Plaintiff's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation.  Having carefully reviewed the ALJ's decision, the court concludes that it is supported by substantial evidence, as shown in his analysis in each of the "B" factors listed above.

The ALJ also found that Plaintiff did not meet the "C" criteria.  (Tr. 20.)  As relevant here, to meet the requirements of that section, Plaintiff needed to show repeated episodes of decompensation, each of extended duration, or a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04(C), 12.06(C).  As discussed above, Plaintiff did not meet these criteria.  As a result, the ALJ concluded that Plaintiff's residual disease process had not resulted in such marginal adjustment that even a minimal increase in mental

demands or change in the environment would be predicted to cause her to decompensate.  (Tr. 20.)  Thus, the ALJ adequately supported his findings and discussed the evidence that supported his determination in concluding that Plaintiff's impairments did not meet the requirements of Listings 12.04 or 12.06.

In addition, the court notes that even if Plaintiff met the specific requirements of Listing 12.04(A) or 12.06(A) – in other words, demonstrated the presence of a depressive syndrome or anxiety-related disorder – she has not shown the requisite level of severity.  Indeed, in her memorandum, Plaintiff's arguments regarding Listings 12.04 and 12.06 are very general and fail to specifically demonstrate to the court how Plaintiff's impairments met the requirements of these listings.  Further, Plaintiff has neither explained how her impairments allegedly met the severity requirement for Listing 12.04 or 12.06, nor explained how the general medical evidence cited in her brief would support such a theory.

Plaintiff also presents the argument that even if she did not meet the requirements of Listings 12.04 or 12.06, the combination of her impairments equaled them.  Having carefully examined Plaintiff's arguments and the record, the court concludes that this argument lacks merit.

A claimant may not circumvent the requirements of a listing by "equaling" rather than "meeting" the listing.  *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).  Moreover, a claimant

cannot establish medical equivalence merely by showing that the overall functional impact of her unlisted impairment, or combination of impairments, was as severe as that of a listed impairment. *See Zebley*, 493 U.S. at 531. Instead, the claimant must present medical findings equal in severity to all the criteria for the listing. *See id.* Plaintiff has not explained how her impairments allegedly combined to equal all the criteria for Listings 12.04 or 12.06, or how the general medical evidence cited in her brief would support such a theory.

Rather than meeting that burden, Plaintiff argues that the ALJ failed to consult a medical expert in evaluating whether she medically equaled a listing. Having examined this argument, the court concludes that it lacks merit. Findings of fact made by State agency medical consultants and other program physicians become opinions at the ALJ level of administrative review. *See* SSR 96-6p, 1996 WL 374180, at *2. While the ALJ is responsible for deciding the ultimate legal question of whether a listing is met or equaled, the ALJ must receive state agency doctors' judgments on the issue of medical equivalence into the record as expert opinion evidence. *See id.* at *3. In the present case, the opinions of the state agency medical consultants were received into the record, and the ALJ properly considered them in making his determination. (Tr. 19-20, 27, 29, 202-15.) Thus, contrary to Plaintiff's argument, the ALJ did consider medical expert opinions in making his step three finding. *See Rosebrough*

*v. Astrue*, No. 08-4051-SAC, 2009 WL 634699, at *6-7 (D. Kan. March 11, 2009) (unpublished opinion) (finding that the ALJ considered medical expert opinions

at step three where the record contained a Disability Determination and Transmittal Form and Residual Functional Capacity Assessment signed by a State agency medical consultant).

Thus, because Plaintiff has not met his burden of showing the ALJ erred at step three, or that the ALJ's step three finding is not supported by substantial evidence, the court rejects his argument.

## II.  Treating Physician's Opinion

Second, Plaintiff argues that the ALJ failed to properly evaluate the opinion of Plaintiff's treating therapist, Louise H. Johnson, LCSW, that Plaintiff is disabled and unable to work as a result of her physical and mental impairments.

> In deciding how much weight to give a
> treating source opinion, an ALJ must first
> determine whether the opinion qualifies for
> controlling weight.  To make this
> determination, the ALJ . . . must first
> consider whether the opinion is
> well[]supported by medically acceptable
> clinical and laboratory diagnostic
> techniques.  If the answer to this question
> is "no," then the inquiry at this stage is
> complete.  If the ALJ finds that the opinion
> is well[]supported, he must then confirm that
> the opinion is consistent with other
> substantial evidence in the record.  If the
> opinion is deficient in either of these
> respects, then it is not entitled to
> controlling weight.

Even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. Those factors are: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Under the regulations, the agency rulings, and [Tenth Circuit] case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion . . . that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight. If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotations and citations omitted) (sixth alteration in original); *see also* 20 C.F.R. § 416.927(d).

As with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies. *See, e.g., Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). In addition, a treating source's opinion that a claimant is

14

disabled "is not dispositive because final responsibility for
determining the ultimate issue of disability is reserved to the
[Commissioner]." *Castellano v. Sec'y of Health & Human Servs.*,
26 F.3d 1027, 1029 (10th Cir. 1994); *see also* 20 C.F.R. §
416.927(e).

Plaintiff argues that the ALJ failed to properly evaluate
the opinion of Plaintiff's treating therapist, Louise H. Johnson,
LCSW, that Plaintiff is disabled and unable to work as a result
of her physical and mental impairments.  Plaintiff argues that
the ALJ failed to evaluate Ms. Johnson's opinion in accordance
with Tenth Circuit law, and that the ALJ failed to identify
legitimate reasons for discounting Ms. Johnson's opinion.

Plaintiff has not explained in any specific way how the
ALJ's analysis allegedly failed to comport with Tenth Circuit
case law.  In addition, Plaintiff has not offered any analysis in
support of her argument that the ALJ's reasons for discounting
Ms. Johnson's opinion were not specific or legitimate.  Plaintiff
simply argues that the ALJ's rejection was "based on illegitimate
grounds, since the record is replete with evidence which supports
the opinion."  (Doc. 16, at 15.)

The ALJ recognized that Ms. Johnson had opined on October
23, 2005, that Plaintiff "was disabled both physically and
mentally, and would continue to be disabled until she is
adequately integrated to a more whole functioning individual with
a degree in an educational field that allows for her physical and

psychological limitations." (Tr. 24.) The ALJ also recognized that Ms. Johnson opined that Plaintiff's "prognosis is good as a long-term goal for her mental health provided she follows through with her therapy." (Tr. 24.) The ALJ decided not to give full weight to Ms. Johnson's opinion because the vocational expert was able to suggest numerous occupational categories that could accommodate Plaintiff's physical and mental limitations that do not require a college degree. (Tr. 24.)

A treating medical source[5] may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions. *Castellano*, 26 F.3d at 1029 (citing 20 C.F.R. § 404.1527(a)(2)). The Commissioner must evaluate these opinions to determine whether they are entitled to controlling weight and, as such, are well supported by clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. *See Castellano*, 26 F.3d at 1029. However, as discussed above, treating medical source opinions on issues reserved to the Commissioner – such as whether a claimant is "disabled" – are never entitled to controlling weight or special significance.

---

[5]In his brief, the Commissioner agreed to treat Ms. Johnson's October 2005 opinion as an opinion from an acceptable medical source; therefore, the court need not address whether Ms. Johnson is an "acceptable medical source" as defined in 20 C.F.R. § 404.1502 (Doc. 19, at 18 n.3). *See* SSR 06-03p, 2006 WL 2329939, at *2.

*See id.* (observing that opinions as to whether a claimant is disabled are not entitled to controlling weight because the Commissioner is responsible for determining that issue); SSR 96-5p, 1996 WL 374183, at *2; 20 C.F.R. § 404.1527(e). Because the opinion of Ms. Johnson that Plaintiff bases her argument upon is an opinion regarding whether Plaintiff is "disabled," an issue reserved to the Commissioner, the court rejects Plaintiff's argument.

Even where, as here, the case record contains an opinion from a treating medical source that is dispositive of the ultimate issue of disability and, therefore, reserved to the Commissioner, the ALJ must still evaluate all of the evidence in the case record to determine the extent to which the opinion is supported by the record. *See* SSR 96-5p, 1996 WL 374183, at *3; *see also Wade v. Astrue*, 268 F. App'x 704, 706 (10th Cir. 2008) (unpublished opinion) (recognizing that, while a treating source opinion on an issue reserved to the Commissioner is not entitled to controlling weight, the ALJ must still evaluate the opinion using the factors set forth in 20 C.F.R. § 404.1527(d)); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (clarifying that an ALJ is not required to "apply expressly each of the six relevant factors" listed in Section 404.1527(d) in determining the weight to give to a medical opinion).

In the present case, the ALJ evaluated Ms. Johnson's opinion, and noted that her conclusion that Plaintiff was

disabled was based in part on her assumption that Plaintiff needed to obtain a college degree before she could work[6] (Tr. 24, 134). The ALJ properly concluded that Ms. Johnson's conclusion, which reflected both her medical opinion and her vocational assumptions, was not consistent with the vocational expert's testimony (Tr. 24). *See Doyal*, 331 F.3d at 764 (finding that an ALJ provided a specific, legitimate reason for rejecting a physician's opinion where the ALJ noted that the opinion was not consistent with the record as a whole) (citing 20 C.F.R. § 404.1527(d)(4)). In his analysis, the ALJ also noted that Ms. Johnson had also opined that Plaintiff's prognosis was "good" so long as she followed through with therapy (Tr. 24), a statement that is inconsistent with Ms. Johnson's opinion that Plaintiff was "disabled." *See Castellano*, 26 F.3d at 1029 (finding that an ALJ properly discounted a treating physician's opinion that a claimant was disabled where the physician provided inconsistent opinions and recommended that the claimant pursue vocational rehabilitation). Thus, the ALJ provided specific and legitimate reasons for rejecting Ms. Johnson's opinions. *See White*, 287 F.3d at 907-08.

---

[6]The court notes that evidence submitted to the Appeals Council after the ALJ's decision shows that, during the same time period, Plaintiff acknowledged she wanted to finish college before obtaining employment, and Ms. Johnson released Plaintiff to attend college full-time and noted that obtaining a college degree was Plaintiff's "top priority" (Tr. 309, 339).

Based on the foregoing, the court rejects Plaintiff's argument challenging the ALJ's treatment of Ms. Johnson's opinion.

### III.  Credibility Determination

Third, Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility.  "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  While the ALJ must cite specific evidence relevant to the factors used in evaluating a claimant's subjective complaints and explain why if he concludes those complaints are not credible, *see id.*, this process "does not require a formalistic factor-by-factor recitation of the evidence," *Qualls*, 206 F.3d at 1372.  "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, [the procedural requisites] are satisfied."  *Id.*

After considering the evidence of record, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  (Tr. 23.) In making this determination, the ALJ set forth the specific evidence that he relied on in evaluating Plaintiff's credibility.

19

*See Qualls*, 206 F.3d at 1372 (finding an ALJ properly rejected a claimant's subjective statements where he identified the specific evidence he relied on in evaluating credibility).  Factors cited by the ALJ included Plaintiff's activities, the consistency or compatibility of non-medical testimony with objective medical evidence, and subjective measures of credibility that are peculiarly within the ALJ's judgment.  *See Kepler*, 68 F.3d at 391 (naming factors to be considered in evaluating a claimant's credibility); *see also Qualls*, 206 F.3d at 1372 ("*Kepler* does not require a formulaic factor-by-factor recitation of the evidence").

As discussed above, Plaintiff attended college during the relevant time period, and Ms. Johnson and Dr. McBride recognized Plaintiff had "the ability to do very well showing good intellectual capacity."  (Tr. 131.)  *See Markham*, 601 F.2d at 534.  The ALJ also properly observed that Plaintiff had previously maintained regular employment despite her impairments, and the impairments were present when her prior stipulated closed period of disability ended on November 30, 2002.  (Tr. 20, 25, 70.)  Indeed, Ms. Johnson referred Plaintiff to vocational rehabilitation during the relevant time period.  (Tr. 135.)  *See Hargis*, 945 F.2d at 1489.

The ALJ also noted inconsistencies between Plaintiff's statements about her abilities and her treatment providers' opinions about her abilities.  (Tr. 20.)  As previously

discussed, although Plaintiff alleged that she did not cook, clean, or "really" shop, Ms. Johnson and Dr. McBride observed Plaintiff was "able to handle her daily personal affairs, such as shopping, driving a car, and other activities of daily living" (Tr. 20 (citing Tr. 93-99, 129, 132)). *See Gossett*, 862 F.2d at 807.

Finally, the ALJ properly observed that, although Plaintiff alleged "very severe and limiting upper extremity pain and dysfunction," she "engaged in consistent, repetitive, and frequent moving and gesturing with her hands" during the administrative hearing, with "no guarding or pain observed with the upper extremities." (Tr. 22.) *See White*, 287 F.3d at 910 (recognizing that an ALJ is "uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion"); *Qualls*, 206 F.3d at 1373 ("Although an ALJ may not rely solely on his personal observations to discredit a claimant's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility."). The ALJ also noted that, although Plaintiff alleged extreme limitations in the ability to sit, she sat through the entire two-hour hearing without being in any observable pain (Tr. 23). *See id.*

The ALJ properly set forth the specific evidence that he relied on in evaluating Plaintiff's subjective complaints. Therefore, the court rejects Plaintiff's credibility argument.

*See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)
("Credibility determinations are peculiarly the province of the
finder of fact, and we will not upset such determinations when
supported by substantial evidence.").

## IV.  RFC Determination

Fourth, Plaintiff argues that the ALJ improperly determined
Plaintiff's RFC.  Between steps three and four of the sequential
evaluation process, the ALJ must assess a claimant's RFC "based
on all the relevant medical and other evidence."  20 C.F.R. §§
404.1520(a)(4), 404.1545(a)(3).  "The determination of RFC is an
administrative assessment, based upon all the evidence of how the
claimant's impairments and related symptoms affect her ability to
perform work-related activities."  *Young v. Barnhart*, 146 F.
App'x 952, 955 (10th Cir. 2005) (unpublished opinion) (citing SSR
96-5p, 1996 WL 374183, at *2, *5).  "The final responsibility for
determining RFC rests with the Commissioner, based upon all the
evidence in the record, not only the relevant medical evidence."
Young, 146 F. App'x at 955; *see also Howard v. Barnhart*, 379 F.3d
945, 949 (10th Cir. 2004).  SSR 96-8p requires an ALJ's RFC
assessment to include "a narrative discussion describing how the
evidence supports each conclusion, citing specific medical facts
(e.g. laboratory findings) and nonmedical evidence (e.g., daily
activities, observations)."  1996 WL 374184, at *7.

The ALJ found that Plaintiff could perform a limited range
of unskilled light work.  (Tr. 21.)  The ALJ provided a narrative

discussion describing how the evidence supported his conclusions, and citing to specific medical facts and non-medical evidence (Tr. 21-25). *See* SSR 96-8p, 1996 WL 374184, at *7. The ALJ also explained how he considered and resolved material inconsistencies or ambiguities in the evidence in the case record; for example, the ALJ explained his evaluation of Plaintiff's symptom testimony and Ms. Johnson's opinion, as required by SSR 96-8p. *See id.* The ALJ's finding that Plaintiff could perform light work with no overhead lifting or reaching of any significance and no repetitive motion tasks with her upper extremities is consistent with Dr. Bowen's opinion that she could "work at a sedentary level with no repetitive use of her fingers, hands and wrists, including simple grasping, fine manipulation and pushing and pulling control" (Tr. 24, 149). *See* SSR 96-5p, 1996 WL 374183, at *5 ("Adjudicators must not assume that a medical source using terms such as 'sedentary' and 'light' is aware of our definitions of these terms.").

Plaintiff challenges the ALJ's RFC finding on the grounds that "the ALJ's assessment appears as a conclusion. . . , with no reasoning and no citation of specific facts)." (Doc. 16, at 18.) In support of her argument, Plaintiff cites to page 21 of the transcript, which includes the ALJ's finding regarding Plaintiff's RFC; however, Plaintiff fails to acknowledge the more than three pages of discussion following the RFC finding, in which the ALJ explained the reasons for his finding, and cited to

specific parts of the record.  (Tr. 22-25.)  Plaintiff also appears to assert that the ALJ did not discuss "uncontroverted evidence not relied upon and the probative evidence he rejected" (Doc. 16, at 18-19); however, Plaintiff has not identified any evidence that the ALJ failed to discuss.  Significantly, the ALJ stated that he considered "the entire record" in reaching his decision (Tr. 18).  *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2008) (recognizing a practice of taking a lower tribunal at its word where it declares that it has considered a matter).  To the extent that Plaintiff asks the court to reweigh the evidence and substitute its judgment for the ALJ's, Plaintiff's argument fails because the Tenth Circuit has stated that this is not the court's role on substantial evidence review. *See Lax*, 489 F.3d at 1084.  Instead, the Tenth Circuit has explained that where the evidence as a whole could support either the agency's decision or an award of benefits, the agency's decision must be affirmed.  *See id.*  As a result, the court rejects Plaintiff's RFC argument.  *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078-79 (10th Cir. 2007) (affirming where the record provided "ample support" for the ALJ's decision).

## V.  MISSING EVIDENCE

Plaintiff also requests remand on the grounds that "evidence appears to be missing from the record" (Doc. 16, at 19); however, Plaintiff has neither identified any missing evidence nor explained why the allegedly missing evidence should be included

in the record.  The Commissioner has submitted to the court that the agency has provided a full and accurate transcript of the entire record of proceedings related to this case.  *See* Doc. 10, Certification.  As a result, the court also rejects this argument.

**RECOMMENDATION**

Based on the above analysis, **IT IS RECOMMENDED** that the ALJ's decision be **AFFIRMED.**

Copies of the foregoing report and recommendation are being mailed to the parties who are hereby notified of their right to object to the same.  The parties are further notified that they must file any objections to the report and recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within fourteen (14) days after receiving it.  Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this 15th day of April, 2010.

BY THE COURT:

_____
Samuel Alba
United States Magistrate Judge